Jones, Administrator, and others vs. The United States.

*August 19, 1879 — February 3, 1880.*

Federal and State Laws: Flowage of Land by Fox and Wisconsin River Improvement. *(1-5) Taking of land by United States: Recovery of damages in state courts pursuant to federal and state legislation. (6) Effect of proof that the injury is partly caused by another dam.*

1. Under the act of congress of March 3, 1875, and sec. 2, ch. 291 of the general laws of Wisconsin for 1874, compensation may be recovered for lands flowed by the Fox and Wisconsin River Improvement; and the amount of such compensation may be ascertained by proceedings in the courts of this state as provided by ch. 119 of the laws of this state of 1872, in respect to lands taken by railroad companies.

2. The fact that in the judicial proceedings in the state courts in such cases the United States is the nominal defendant, does not render the state act invalid; because the act of congress authorizes the compensation to be ascertained "in the mode provided by the laws of the state;" the whole proceeding is in fact one by which the general government enforces its condemnation of the land; and that government has the right to sue in the local courts, and is suable there *with its own consent.*

3. The act of congress in question is not liable to the objection that it attempts to delegate to the state tribunals the power of the general government to condemn land.

VOL. XLVIII. — 25

Jones, Adm'r, and others vs. The United States.

4. The act of congress authorizes the ascertainment of damages in the manner above indicated, in case of lands flowed either *before* or after the passage of the act by works *previously* or subsequently constructed, where compensation for such flowage *was then* or should thereafter become legally owing, if, "in the opinion of the officer in charge, it is not prudent that the dam or dams be lowered." *Held*, that this contemplates not a mere *expression of opinion* by the officer in charge, but such final and conclusive action of the United States, by such officer, as would constitute a legal release of all present and future right to maintain the dam as previously maintained; and even such relinquishment will not prevent a recovery for *past* damages.
5. The damages in such cases should include all past damages to the land, caused by the improvement, within the period of statutory limitation.
6. In an action for flowage of land by a dam, the fact that another dam contributes to some extent to produce the flowage complained of, is no defense. *Arimond v. G. B. & M. Canal Co.*, 35 Wis., 51; *Pumpelly v. The G. B. Company*, 13 Wall., 166.

APPEAL from the Circuit Court for *Fond du Lac* County.

On the 21st of April, 1875, the plaintiffs, *Frank L. Jones*, administrator of the estate of George J. Pumpelly, deceased, *James K. Pumpelly* and *Edwin C. Gray*, filed in the office of the clerk of said circuit court a petition, duly verified, addressed to the Hon. CAMPBELL McLEAN, judge of the fourth judicial circuit of Wisconsin, asking him to appoint three commissioners of appraisal pursuant to ch. 119 of the general laws of this state for 1872, and the amendments thereto, for the appraisal of certain lands in said petition described, and of the damages occasioned to said lands by the dam owned by the *United States of America* across the north channel of the outlet of Lake Winnebago, in Winnebago county in this state. The petitioners represented that they were the owners and occupants of said lands, and had been so for many years then last past; that the dam caused great injury to the lands by causing the waters of Lake Winnebago to set back upon, flow and soak the same; that no compensation had ever been made for such injuries; that the dam had been maintained by the Fox and Wisconsin Improvement Company and the Green

Bay and Mississippi Canal Company, corporations organized under the laws of Wisconsin for the purpose of improving the Fox and Wisconsin rivers; that the *United States* had succeeded to the title and possession of the improvement, and its locks and dams, of which the dam above mentioned was one; that by an act of the legislature of Wisconsin, approved March 12, 1874 [ch. 291 of 1874], the government of the *United States* was authorized to condemn real estate and property necessary to be taken for the purpose of such improvement; that by an act of congress approved March 3, 1875 [ch. 166, U. S. Stats. of 1875], it was, amongst other things, enacted that in case of the flowage or injury of any lands or other property " by means of any part of the works of said improvement heretofore or hereafter constructed, for which compensation is now or shall become legally owing, and in the opinion of the officer in charge it is not prudent that the dam or dams be lowered, the amount of such compensation may be ascertained " in the mode provided by the laws of the state in which such property lies; that said dam cannot be maintained without continuance of such injuries to said lands; and that by said act of congress, and also by an act of congress of June 23, 1874, an appropriation was made to the amount of $800,000 for carrying on and completing said improvement, of which sum $50,000 was authorized to be appropriated for the payment of damages for property taken and damaged by reason of the construction and maintenance of said works of improvement.

After the filing of said petition, and after due notice to the attorney for the *United States*, the judge appointed three commissioners to appraise the damage alleged to have been sustained by the plaintiffs; and the commissioners, after a hearing, awarded damages to the plaintiffs in the sum of $8,000. Both parties appealed from the award; and the cause came on for trial at the November term of the circuit court for Fond du Lac county. Before the impaneling of the jury, defendant

objected to the jurisdiction of the court, on the grounds, 1. That the court had no jurisdiction of defendant's person. 2. That the court has no jurisdiction to try a case in which the *United States* is a party.   3. That the act of congress of March 3, 1875 [said ch. 166], is unconstitutional in that it assumes to confer upon a state court authority to try a case in which the *United States* is a party.   The objection was overruled.

At the close of the evidence, the court instructed the jury at defendant's request:   1. That if the dam across the north channel or outlet of Lake Winnebago, *at Menasha*, was constructed, and plaintiffs' lands flowed and injured or destroyed by reason of the dam raising the water in the lake, more than twenty years prior to the filing of the petition in this action, the action was barred.   2. That unless said dam was the property of the defendant and maintained by it, plaintiffs could not recover.   3. That it appeared from the uncontradicted evidence that the dam across the *south* channel or outlet of Lake Winnebago, *at Neenah*, was built, and continued to be owned and maintained, wholly by private parties for hydraulic purposes.   4. That if plaintiffs' lands were flowed, and so injured or destroyed, from natural causes, and not in consequence of the construction of the dam at Menasha, plaintiffs could not recover.   5. That if plaintiffs' said lands were damaged by reason of the construction of the dam at Menasha, and defendant was liable therefor, the jury should ascertain what benefits, if any, had accrued to plaintiffs' adjoining lands in consequence of the improvement of the Fox and Wisconsin rivers, and their verdict should be only for the *excess* of the damages above such benefits.

The court refused to give instructions asked by defendant, substantially as follows:   1. That plaintiffs could not recover unless it appeared affirmatively that in the opinion of the officer in charge of the improvement of the Fox and Wisconsin rivers, it was not prudent that the dam here in question

should be lowered.   2. That plaintiffs could not recover unless the jury found that if the dam *at Neenah* had never been constructed, the one here in question would have caused the flowage of plaintiffs' lands.   3. That if the other issues of fact were found for the plaintiffs, the measure of their damages was the value of their said lands at the time the same were submerged or injured, with interest on that sum.  4. That if the lands described in the petition were flowed or injured by the construction of the dam in question, prior to the purchase of said lands by the plaintiff *Gray*, to the same extent as at the time of the filing of the petition, there was a misjoinder of plaintiffs, and no recovery could be had in this action.   5. That plaintiffs could not recover by reason of the nonjoinder of certain heirs-at-law of George J. Pumpelly, deceased, as parties plaintiff.

The following instructions given by the court in its general charge were excepted to by the defendant:  1. That if it appeared from the evidence that, in the prosecution or maintenance of the improvement of the Fox and Wisconsin rivers, the lands specified in the plaintiffs' petition were, on the 3d of March, 1875, and had since been, flowed or injured by means of the dam in question, and that compensation for such injury was on that day legally owing, and in the opinion of the officer in charge it was not prudent that the dam or dams causing such injury should be lowered, then this proceeding was lawfully instituted; and that if the jury were satisfied from the evidence that said lands described in the petition were and continued to be injured as set forth in the petition, the plaintiffs were entitled to recover in this proceeding. 2. That if the jury should find for the plaintiffs, the measure of their damages was the aggregate of the following items: (1) The depreciated value of the use of the land by means of the injuries thereto from soakage and flowage occasioned by said dam, down to the time when they should " find that the lands were taken by means of such flowage," not exceeding

six years before the filing of the petition. (2) The value of the land so flowed at the time they should find they were so taken, with interest on the last named sum to the time of the verdict.

There was a verdict in favor of the plaintiffs, for $10,000 damages; a new trial was refused; and, from a judgment in accordance with the verdict, the defendant appealed.

*O. B. Thomas*, for appellant:

1. The provision of art. V of the constitution of the United States, declaring that private property shall not be taken for public use without just compensation, is not only a *limitation* of the exercise of the power by the government, but is also by implication a *grant* of power to take upon making compensation. *Barron v. Baltimore*, 7 Peters, 243; *Kohl v. United States*, 91 U. S., 372. This implied grant is vested exclusively in the government of the United States, and its exercise by any other sovereignty for that government is prohibited as completely as though such prohibition had been expressed in words. So, the similar provision in our state constitution is a grant of power which applies to this state alone, and can be exercised only by this state for its own public use. The powers which the constitution defines, limits and apportions, must necessarily be exercised within the sovereignty which creates it, and prohibition of their exercise elsewhere would be a mere idle formality. The constitution of this state does not declare that our criminal laws shall not apply to offenses committed within the limits of a sister state; yet an enactment that they should so apply would be void. *Trombley v. Humphrey*, 23 Mich., 481. If it be claimed, however, that this right existed before the constitution as an essential attribute of sovereignty, unlimited by the condition of making compensation, it must then be conceded that the *necessity* of the state is the only foundation or justification for its exercise. Grotius, b. 1, ch. 1, sec. 6; b. 2, ch. 14, sec. 7; b. 3, ch. 19, sec. 7; ch. 20, sec. 7; Puff., b. 8, ch. 5, sec. 7; Cooley's Con. Lim., 524; McKin-

LEY, J., in *Pollard's Lessee v. Hagan*, 3 How., 223. It follows that one sovereignty cannot take for the use of another, because the taking in such case is not necessary to the sovereignty exercising the power. An attempt by a state to exercise this prerogative where it is not needful to the due execution of its own sovereign powers, is wholly unauthorized and inadmissible; as much so as it would be for the United States to exercise the like authority and employ the like agency for a foreign country. Puff. per Berbeyrac, b. 8, ch. 5, sec. 7, cited in 2 Kent's Com., 339; 6 How., 545; Cooley's Con. Lim., 524; *Kohl v. United States*, 91 U. S., 367; *Darlington v. Same*, 82 Pa. St., 387. For the reasons above stated, the law of this state (ch. 291 of 1874, sec. 2), which attempts to confer upon the state authority to condemn private property for the use of the United States, is unconstitutional and void. And in so far as a like intent is manifested in the act of congress, ch. 166, approved March 3, 1875, that also must be held unconstitutional. Neither the United States nor the state, nor both together, could submit this question by consent, by statute or in any other way, to a state court, because there is an absolute and fatal want of jurisdiction over the subject matter of the action. *Lincoln v. Tower*, 2 McLean, 474; 4 Wheat., 193; *Barron v. Mayor*, 7 Peters, 243; Const. of U. S., art. III, secs. 1 and 2. But there is no attempt in the act of congress to confer this authority on the state tribunals. It simply declares that compensation shall be ascertained "in the mode" provided by the laws of the state. While the laws of the state are thus made the "mode," its courts are not made the *forum*. It is contended, however, that there has been, in the case at bar, no exercise of the judicial power of the state, but that in fact the state court is constituted a federal tribunal for this particular purpose; and *Kohl v. United States, supra,* is cited as authorizing this proceeding. True, in that case it is said that congress may submit this question of compensation to commissioners or to any tribunal. But if to commis-

sioners, would not the federal court be the supervising tribunal? So the tribunal referred to by the court seems to be a federal tribunal, at least one over which the federal courts have control. Moreover, in all the proceedings in this case there has been an attempted exercise of the judicial power of the state in enforcing the right of eminent domain. The proceedings in the circuit court are founded upon and regulated by the law of the state; and the right of eminent domain of the state is attempted to be exercised by the court in the same manner and to the same extent as in case of a railroad company taking private property for its use. To complete the parallel, the supreme court of the state is called upon to review the judgment of the circuit court. It cannot be successfully contended that these high courts are but instruments, like commissioners, who are subject to the legislative and judicial control of the general government. It is also claimed that sec. 2, art. III of the U. S. constitution, does not prohibit jurisdiction to the state courts in cases where the United States is a party. This view may be seriously questioned. *Martin v. Hunter's Lessee*, 1 Wheat., 304; *Campbell v. Sherman*, 35 Wis., 103. But if the position is correct, it does not follow that the state courts have jurisdiction as to either person or subject matter in all cases. Many cases might be suggested where jurisdiction does not exist and could not be conferred; and, for reasons already stated, the case at bar would seem to be one of them. But it is further claimed that the use of the United States is the public use of the state. If this be so, then it is equally the public use of every other state; and there is nothing to prevent the state of Illinois, as well as Wisconsin, from condemning lands within this state, in aid of this improvement. The cases of *Gilmer v. Lime Point*, 18 Cal., 229, and *Burt v. Merchants' Ins. Co.*, 106 Mass., 356, in which this doctrine is understood to be advanced, are opposed by the later and better considered cases of *Trombley v. Humphrey*, *Kohl v. United States*, and *Darlington v. Same*, *supra*.

It is said that this proceeding is not an exercise of the right of eminent domain, but is for compensation, where all the essential elements of eminent domain have been actually exercised and accomplished. But until just compensation is made, there can be no lawful taking. U. S. Const., art. V; Const. of Wis., art. I, sec. 13. The owner might recover, in trespass, his damages accruing before suit, but not permanent damages as for the taking of the land. *Sherman v. M., L. S. & W. R. R. Co.*, 40 Wis., 645–652, and cases cited. The compensation provided and intended by the act of congress under which this proceeding was brought, is the "just compensation" referred to in the constitution. The state law regulating the mode of procedure, and which has been strictly followed by respondents (ch. 119 of 1872, the railroad act), is placed, in the present revised statutes, under the head of "Acquiring lands by right of eminent domain." By the terms of that act, the land-owner puts the law in force for the railroad company, when the latter neglects to act. And this court has repeatedly held that without such a provision in favor of the owner, the act would be void. *Shepardson v. M. & B. R. R. Co.*, 6 Wis., 612–13. The United States could have availed itself of this proceeding; and in that case would it still insist that the same was not an exercise of the right of eminent domain? Yet both cases are provided for in the law, in the same sentence; in both, the proceedings follow strictly the same course, and in each the title and right of possession of the land are vested in the United States.

2. Even by the most favorable interpretation of the act, for respondent, the government reserves to itself the right to be the judge of its own needs; and the petition in this case should allege, and complainant's proofs should show, in the language of the act, that "in the opinion of the officer in charge" it was not prudent that the dam be lowered. This provision is in the nature of a condition precedent to respondent's right of action. It must affirmatively appear that the

land is required, or there is no jurisdiction to appoint commissioners. *Nichols v. Bridgeport*, 23 Conn., 189; *Judson v. Bridgeport*, 25 id., 428; *People v. Brighton*, 20 Mich., 57; *Bohlman v. Railway Co.*, 40 Wis., 157. The case of taking lands for a highway is parallel, in which the necessity must first be made to appear by a written application. The force and vitality of the act of congress, which is the foundation of this action, depend upon the opinion of the officer in charge. It is said that the *opinion* ought not to govern, because the dams have not been lowered. But, first, the law makes the *opinion*, and not the *lowering*, a test of the liability of the government. Secondly, the evidence shows that the government has no use for the dam, and has not used or repaired it, and that in fact the improvements contemplated will do away with its necessity. Thirdly, the plaintiffs are not without remedy, as the dam may be abated as a nuisance.

3. The defendant was in any event only liable for the damages caused by the Menasha dam, and not for those occasioned by the dam at Neenah. It is no argument against this position, that it would be difficult or even impossible to ascertain the damages done by each. *Lull v. Fox & Wis. Imp. Co.*, 19 Wis., 100. But it is settled in such cases that the law will infer equal damage. 20 Barb., 479; 20 Pick., 479; 11 Barb., 370; *Russell v. Tomlinson*, 2 Conn., 206; *Adams v. Hall*, 2 Vt., 9.

4. If damages are to be paid, it should be only such damages as are prescribed by the statute, *i. e.*, the value of the land taken, and damages to the land adjoining, by reason of the overflow, at the time of the taking, together with interest. The depreciated value of the use of the land by reason of the flowage, for six or any number of years, is not a proper item of damage. *Vilas v. Railway Co.*, 17 Wis., 502; *Pick v. Rubicon Hydraulic Co.*, 27 id., 443; Mills on Eminent Domain, § 218; 17 Minn., 444; id., 163; 3 Oregon, 311; 14 Wis., 617; 40 id., 167; 6 id., 636; 43 id., 190.

For the respondents, there was a brief by *Gilson & Ware*, and oral argument by *Mr. Gilson* and *Geo. E. Sutherland:*

1. The government of the United States is not liable to be sued except by its own consent, given by law, so that, until the act of 1875, the plaintiffs, though deprived of their land, were wholly without redress to recover compensation. 4 How., 286; 9 id., 386. But congress has unquestioned power to refer any controversy between the government and its citizens to any officer, board of arbitrators, commission or court, in such way as to render the award or decision binding. *Brown v. United States*, 6 Court of Claims Rep., 171. In this respect, the position of the United States does not differ from that of a state. Each state is a public corporation, and as such subject to the power in its governing body to submit it as a party to the jurisdiction of any court. Dillon on M. C., § 14; *Kane v. Fond du Lac*, 40 Wis., 495; *Calkins v. State*, 21 id., 501; *Beers v. State of Arkansas*, 20 How., 527; *Murray's Lessee v. Hoboken Land & Imp. Co.*, 18 How., 272. By the act of March 3, 1875, congress, on behalf of the United States, consented that compensation might be ascertained in the mode provided by the laws of this state, having in view ch. 119 of 1872 and sec. 2, ch. 291 of 1874, which defined the only mode or procedure then in force for determining such compensation; and thereby submitted the United States as a party to the statutory proceeding, and permitted the government to be called into court and made a defendant like an individual or a private corporation. This was a waiver by the United States of its exemption as a sovereign from suits. To hold otherwise would be to render the statute a nullity, which is not to be permitted. Sedgw. Stat. and Con. Law, 233; *State v. Eau Claire*, 40 Wis., 533; Cooley's Con. Lim., 182–7. But if any doubt can arise from the language of the act, as to its intent and the remedy to be pursued, the practical construction given to it by the attorney general of the United States, acted upon by all persons affected by the improvement, and

adopted and followed by the legal profession, is decisive of the question. Sedgw., 227; *Harrington v. Smith*, 28 Wis., 43. The statutes of the state and the act of congress are to be taken together. Sedgw., 229-233; *Duke v. Cahawba Nav. Co.*, 10 Ala., 82; *Reddall v. Bryan*, 14 Md., 444; 7 Opin. Att'ys Gen., 114. Finally, the payment of the commissioners in this and other similar cases is a legislative interpretation of the act of 1875, an acknowledgment of the correctness of the proceedings, and a ratification of the acts of the commissioners. 2. This act is not in conflict with secs. 1 and 2, art. III of the U. S. constitution. It is only cases arising under the laws, treaties and constitution of the United States, and admiralty and maritime cases, jurisdiction of which is prohibited to the state courts. In all other cases, the jurisdiction of the federal courts can only be made exclusive at the election of congress. *Sturgis v. Crowninshield*, 4 Wheat., 193; *Houston v. Moore*, 5 id., 1; *Delafield v. Illinois*, 2 Hill, 159. And in these cases it is not because the United States is a party that the state courts are prohibited to act; but jurisdiction of the subject matter is forbidden. The constitution no more makes the federal judiciary exclusive as to all suits in which the United States is a party, than it does of all suits to which citizens of different states are parties. The only superiority of the government — and that not derived from the constitution — is its exemption, by virtue of its sovereignty, from suits without its consent. Want of consent excludes the jurisdiction of all courts. When consent is given, the government is subject to the same rules as an individual, in relation to jurisdiction of the person and mode of procedure. The act of 1875 did not establish the court nor confer jurisdiction; but congress merely consented to the United States being brought in as a defendant. 3. That the flooding of land is a taking thereof, within the meaning of the constitutional provision requiring compensation, is abundantly established. *Arimond v. G. B. & Miss. Canal Co.*, 31 Wis., 316; 35 id., 41; *Pum-*

Jones, Adm'r, and others vs. The United States.

*pelly v. Green Bay Co.*, 13 Wall., 166; *Grand Rapids Booming Co. v. Jarvis*, 30 Mich., 308; *Orr v. Quimby*, 54 N. H., 590; *Hooker v. New Haven Co.*, 14 Conn., 146; Mills' Em. Dom., § 30. This action is not a proceeding for the exercise of the right of eminent domain, but for compensation, where all the essential elements of eminent domain have been actually exercised and accomplished so far as the defendant is concerned. This right is given for the purpose of obtaining control and possession of property for public use. In this case that has already been secured, and the only right remaining to respondents is the legal title, to be vested in the government, or its possession made lawful, by making compensation in damages. Sedg. Stat. and Con. Law, 455-6; Cooley's Con. Lim., 524. The actual occupation of the land and exclusion of the owners therefrom precludes all inquiry into the necessity of the taking, unless the owner chooses to raise it. *Higgins v. Chicago*, 18 Ill., 276; *Chicago v. Wheeler*, 25 id., 478. 4. The question whether, in the opinion of the officer in charge, it is not prudent that the dam be lowered, cannot be inquired into on appeal from the award of the commissioners. It should have been raised before the court or judge upon the application for appointment of commissioners, and reviewed by *certiorari* or some other direct proceeding to the same end. The commissioners are not a body to hear grave questions of law. They are presumably selected from their familiarity with property, and the only issue before them is the amount of damages or compensation. Upon appeal, no other or different issue can be raised than the one before the commissioners. *Miller v. P. & McG. R'y Co.*, 34 Wis., 533; *Stringham v. Oshkosh & Miss. R. R. Co.*, 33 id., 471; *Burns v. M. & M. R. R. Co.*, 9 id., 450; *Ney v. Swinney*, 36 Ind., 454; *M. & M. R. R. Co. v. Rosseau*, 8 Iowa, 373; *Matter of N. Y. C. R. R. Co.*, 66 N. Y., 407; *Reitenbaugh v. Chester Valley R. R. Co.*, 21 Pa. St., 100; *Delaware, etc., R. R. Co. v. Burson*, 61 id., 369; *United States v. Reed*, 56 Mo., 565. 5. But, even were that

question subject to review, it was not error to refuse defendant's instruction on that subject. The dam has not been lowered. No steps have been taken and no directions given to lower it, nor any intention manifested by the government or any of its authorized agents that it is to be lowered. On the contrary, appropriations have been made yearly by congress for the "repair, preservation and completion" of the works of the improvement. It would be a remarkable construction of this statute, to hold that, while the United States continues to maintain the dam at the same height and flow the lands to the same extent as heretofore, yet, as the officer in charge is of opinion that it is prudent that the dam be lowered, no compensation shall be ascertained or allowed. 6. It is no defense to this action that the Neenah dam may have contributed to produce the injury. Both dams hold back the same body of water, and the owners of each are responsible for the whole damages as co-trespassers. 1 Addison on Torts, 332, 734–5; *Hume v. Oldacre*, 1 Starkie, 352; *Clark v. Newsam*, 1 Exch., 140; *Holmes v. Wilson*, 10 Ad. & El., 503; *Bowyer v. Cook*, 4 C. B., 236; *Scheike v. Johnson*, 39 Wis., 384; 41 id., 602; 35 id., 41; 31 id., 316; 13 Wall., 166. 7. The dam having been maintained at the same height, and the land of plaintiffs flowed to the same extent, since the transfer to the government as before, the United States must be held to have adopted the original taking, and is legally liable to make compensation for all damages caused by such taking, not barred by the statute of limitations. Opin. of Att'y Gen. Pierrepont; *Pfeifer v. Railroad Co.*, 18 Wis., 155; *Gilman v. Railroad Co.*, 37 id., 317; 40 id., 653. The plaintiffs should be made whole for the injury done them, and the correct rule as to the measure of damages was given to the jury. Cooley's Con. Lim., 568, 570, 571; *Darge v. Horicon Iron Co.*, 22 Wis., 659; *Sherman v. R. R. Co.*, 40 id., 645; *Folsom v. Log-Driving Co.*, 41 id., 602; *McDonald v. G. B. & Miss. Canal Co.*, 42 id., 335; *Simmons v. Brown*, 5 R. I., 299; *Van Riper v.*

*Essex Public Board*, 9 Vroom, 23; *Grand Rapids Booming Co. v. Jarvis*, 30 Mich., 308.   8. While the proceeding is for ascertainment of compensation only, there is no valid objection to the United States acquiring title to property for public uses by proceedings in the state courts in the mode provided by the state laws.   Such proceedings have been upheld in numerous cases where lands have been condemned through the state courts for purposes of forts, lighthouses and public buildings.   And, in the absence of any other remedy, the statute should be liberally construed to advance and effect the intention of the legislative body, and not adjudged invalid unless clearly and unmistakably in conflict with the constitution.   7 Opin. Att'ys Gen., 114; *Reddall v. Bryan*, 14 Md., 444; *Harris v. Elliott*, 10 Pet., 25; *United States v. Reed*, 56 Mo., 565; *Gilmer v. Lime Point*, 18 Cal., 229; *Burt v. Merchants' Ins. Co.*, 106 Mass., 356; *Orr v. Quimby*, 54 N. H., 590.

*Sloan, Stevens & Morris* also filed a brief on the same side, in behalf of the *Green Bay & Mississippi Canal Co.:*

1. The state court has jurisdiction.   The judiciary act of 1789 (1 U. S. Stats. at Large, 78), recognizes the concurrent jurisdiction of the state courts in cases where the United States is a plaintiff.   It is claimed that this does not apply because here the United States is a defendant.   But jurisdiction of the United States as a party defendant is obtained by consent.   Where the act giving consent omits to designate the forum, that one will be presumed to have been intended which is provided for like actions in which the United States is plaintiff.   But in this case the act does designate the state court as the forum.   To put an end to all doubt as to the intention of congress with reference to the forum, chap. 359 of 1877–8, p. 222, providing for payment of the commissioners in this case, recites that they were appointed " pursuant to an act of congress of March 3, 1875."   It was certainly competent for congress to designate the state court.   *Kohl v. United States,*

91 U. S., 367; Mills on Em. Dom., §§ 347–9; *United States v. Dumplin Island*, 1 Barb., 24; *United States v. Fox*, 94 U. S., 315; *Warren v. Wisconsin Valley R. R. Co.*, 6 Biss., 425. If this act does not authorize proceedings *against* the United States, it performs no useful purpose whatever, as the judiciary act authorizes suits in a state court where the United States is plaintiff; and the act declares, and the courts also hold, condemnation proceedings to be a suit. Sec. 14, ch. 119, Laws of 1872; *United States v. Block 121*, 3 Biss., 208. It provides specially for proceedings, according to the mode of the state law, in cases of flowage *theretofore* occasioned, thus clearly recognizing the right of the owner to take the initiative. Ch. 119, Laws of 1872, secs. 14, 22; ch. 291, Laws of 1873, secs. 2, 4; *Sherman v. Railroad Co.*, 40 Wis., 645; *Driver v. W. U. R. R. Co.*, 32 id., 569; *Bohlman v. Railway Co.*, 30 id., 105; 40 id., 157; *Darlington v. United States*, 82 Pa. St., 382.

2. Sec. 2, ch. 291, Laws of 1874, is constitutional. It was not the intent of this act to provide that the state should vicariously exercise its right of eminent domain in behalf of the United States, although the weight of authority is in support of that right. *Gilmer v. Lime Point*, 18 Cal., 229; *Burt v. Merchants' Ins. Co.*, 106 Mass., 356; 1 Barb., 24; *United States v. Reed*, 56 Mo., 565; *Reddall v. Bryan*, 14 Md., 444. Other than to prescribe conditions affecting the mode of exercising the right of eminent domain, its sole province, in connection with other acts and numerous memorials, is to give consent to the jurisdiction of the United States over the property to be acquired, *i. e.*, to perform the work of ex-appropriation or cession; and similar acts have been sustained in other states, notably in Ohio, New York, Missouri, Illinois and Maryland, as will be seen by cases above cited. See also U. S. Const., art. I, sec. 8, cl. 17 — Revision of 1878, p. 21, and cases there cited; 1 U. S. Stats. at Large, 426, §§ 1 and 2; 10 Opin. Att'ys Gen., 34. But it is unimportant whether as a state law this act is constitutional or not; for by the act of congress of

March 3, 1875, it was incorporated therein, and so became a law of the United States. *Wood v. Hustis*, 17 Wis., 416; *Crosby v. Smith*, 19 id., 449. 3. This appeal involves only an inquiry into the amount of compensation; and the question whether or not, in the opinion of the officer in charge, it is prudent to lower the dam, cannot be raised. The only mode in which that question can be reviewed, is by *certiorari*, or bill in equity. R. S. Wis., secs. 1846–7; *Miller v. Railway Co.*, 34 Wis., 533; *Stringham v. Railroad Co.*, 33 id., 471; *Diedrich v. Railroad Co.*, 42 id., 248; *Burns v. Railroad Co.*, 9 id., 450; *Railroad Co. v. Davis*, 43 N. Y., 137; *In re Railroad Co.*, 66 N. Y., 407. This would be true even where the United States was the moving party. It is obvious that where compensation is sought for lands already taken by consent or acquiescence of the land-owner, the right of the government to proceed is waived. Again, the neglect, for so long a period, to lower the dam should estop the government upon this question. 4. The damages under the rule adopted by the court below are less than plaintiffs are entitled to. Observe, that nothing whatever is given for the permanent injury to the lands not taken, but only the depreciation in rental value for six years, a mere fraction of such permanent injury. *Reed v. R. R. Co.*, 105 Mass., 303; *B. & P. R. R. Co. v. McComb*, 60 Me., 290; *Del. &c. R. R. Co. v. Burson*, 61 Pa. St., 369; *Whitman v. Railroad*, 7 Allen, 313; *Parks v. Boston*, 15 Pick., 198; *S. F. & S. J. R. R. Co. v. Mahoney*, 29 Cal., 112; 21 Ohio, 334; Mills on Em. Dom., secs. 65–76, 148, 174–6, 216, 218; Pierce on Am. R'y Law, 230, note (1); *Forster v. Railroad Co.*, 23 Pa. St., 371. 5. "Compensation," as used in the railroad act and the act of congress of 1875, applied to the facts of this case, necessarily covers all damage from flowage, past, present and future, whether arising when the state, the companies or the United States were in possession of the works of improvement. The ground of liability is, that the government has adopted and ratified the original taking, and is

therefore bound to make compensation. Mills on Em. Dom., sec. 216; *Pomeroy v. Railroad Co.*, 25 Wis., 641; *Pfeifer v. Railroad Co.*, 18 id., 155; *Gilman v. Railroad Co.*, 37 id., 317, and 40 id., 653; Green's Brice's Ultra Vires, b. IV, 546, citing *Prouty v. Railroad Co.*, 52 N. Y., 363, and many other cases. Not only is this sound law, but it is for the interest of the government to have the question so determined, as thereby the great majority of cases against it will be barred by limitation, the flowage having been maintained now for more than twenty years.

*George E. Sutherland*, representing the interests of other parties having similar claims against the United States, also filed a brief in this case, as *amicus curiæ*. Upon the question of jurisdiction, he argued that under the articles of confederation the United States might submit itself to the jurisdiction of the state courts *(Beers v. State of Arkansas*, 20 How., 527; *Cohens v. Virginia*, 6 Wheat., 264; *Murray's Lessee v. Hoboken L. & I. Co.*, 18 How., 283); that since the adoption of the constitution, many acts of congress had been passed conferring such jurisdiction, under which there had been repeated decisions of the courts; and that it was hardly possible that congress in all these acts, and the courts in acting under them, had been proceeding all these years upon a radically wrong hypothesis. Acts of congress of Sept. 24, 1789, ch. 20, sec. 11; June 5, 1794, ch. 49, sec. 9; June 9, 1794, ch. 65, sec. 12; July 6, 1797, ch. 11, sec. 20; March 8, 1806, ch. 14; April 21, 1806, ch. 49, sec. 14; Feb. 24, 1807, ch. 20; April 21, 1808, ch. 51; Aug. 2, 1813, chaps. 38, 39; March 3, 1815, ch. 101; April 10, 1816, ch. 44, secs. 17, 18; March 3, 1845, ch. 43, sec. 17; U. S. Statutes at Large, 1874, secs. 2010, 3833, 5328. Again, if under the articles of confederation the state courts could take jurisdiction of the United States, the constitution must in express terms take away the power, or it would not be held to be abrogated. *Delafield v. Illinois*, 2 Hill, 164. But the proper construc-

tion of art. III of the U. S. constitution has been ably discussed in many courts, and if the *dictum* in *Martin v. Hunter's Lessee*, 1 Wheat., 305, would seem to sustain the position of appellant's counsel, it has been repeatedly overruled. *Teall v. Felton*, 1 Coms., 543, affirmed in 12 How., U. S., 292; *Delafield v. Illinois, supra; United States v. Lathrop*, 17 Johns., 4; *Claflin v. Houseman*, 93 U. S., 130; *In re Stacy*, 10 Johns., 328; *United States v. Dodge*, 14 id., 95; *Commonwealth v. Fuller*, 8 Met., 313; *Postmaster General v. Early*, 12 Wheat., 139; Opinion of WASHINGTON, J., in *Houston v. Moore*, 5 Wheat., 1; Story on Const., 533; 1 Kent's Com., 396 et seq.; No. 82 of Federalist; *Cotton v. United States*, 11 How., 229. Further, the practice of the United States in condemning lands for lock sites and other purposes all along the river improvements from Portage to Oshkosh, following exactly the course adopted in this case, is a strong argument that the United States regarded the act as valid. As to the defense that the Neenah dam was partly responsible for the injury to the land, the true rule is to be found in *State ex rel. Reynolds v. Babcock*, 42 Wis., 150, and *Folsom v. Log-Driving Co.*, 41 id., 602, viz., that a tort is always several, and it is no defense that some other wrongdoer has contributed to the injury. Upon the question of damages, he cited *Bevier v. Dillingham*, 18 Wis., 529.

ORTON, J. The state of Wisconsin, in making the improvement of the Fox and Wisconsin rivers, under the act of congress of August 8, 1846, making a grant of lands for such purpose, and the act of the legislature of Wisconsin of June 29, 1848, accepting the trust, constructed, as a part of such improvement, the dam by means of which the lands of the plaintiffs were overflowed and damaged. Any question which might otherwise have arisen, whether such flowing of and consequential damages to the lands of the plaintiffs by means of such dam constitute a *taking* of such lands for public use

under the right of eminent domain, subject to the constitutional condition of making just compensation therefor, has been removed by the decision of the supreme court of the United States in the case of *Pumpelly v. Green Bay Co.*, 13 Wall., 166, in which these lands, and the rights of the former owner as to compensation for such flowage, were considered, and it was held that such flowage was such a *taking*. The act of congress of March 3, 1875, was doubtless framed in view of this decision, and in terms provided for the ascertainment of "compensation *now* legally owing" for lands "*now* flowed" by means of a part of the works "*heretofore* constructed."

Until this act of congress, after the United States had become the owner of the improvement and assumed the burden of making such just compensation not only for lands thereafter to be taken, but also for lands which had been already taken by such flowage, there had been no provisions made by law for such compensation or for ascertaining the same. As the dam was completed so as to cause the flowage and consequential damage in the year 1861, this act may well be construed to authorize the ascertainment of the *past* damages of the plaintiffs, as well as the future or permanent damages to the lands, and in this respect may not be strictly analogous to a *future* taking or condemnation of lands for the use of the improvement. It will be seen that the act provides for both cases, and as to the questions of constitutionality and jurisdiction these provisions may well stand together; but as to the measure of damages in each case, the provisions are distinctive and independent.

Such a provision, allowing full compensation to the owner of lands already flowed and damaged by works already constructed, as for lands actually taken at the time when the flowage was caused by the works, for *past* damages, within the period of limitation by the statute of the state, as well as for future and permanent damages, would be most reasonable, and

appears to be within the terms of the act, and comports with the liberal and equitable policy of the United States in taking charge of the improvement and assuming the liability of making full and just compensation to the private owner for lands taken for its use.

The first section of the act provides, "that whenever, in the prosecution and maintenance of the improvement of the Wisconsin and Fox rivers in the state of Wisconsin, it becomes necessary or proper, in the judgment of the secretary of war, to take possession of any lands, or the right of way over any lands, for canals and cut-offs, or to use any earth, quarries or other materials lying adjacent to or near to the line of said improvement, and needful for its prosecution or maintenance, the officers in charge of said works may, in the name of the United States, take possession of and use the same, after first having paid or secured to be paid the value thereof, which may have been ascertained in the *mode* provided by the laws of the state wherein such property lies. In case any lands or other property is *now* or shall be flowed or injured by means of any part of the works of said improvement *heretofore* or hereafter constructed, for which compensation is *now* or shall become legally owing, and, in the opinion of the officer in charge, it is not prudent that the dam or dams be lowered, the amount of such compensation may be ascertained *in like manner*. The department of justice shall represent the interests of the United States in legal proceedings under this act, and for flowage damages hereinbefore occasioned."

The second section appropriates $25,000, to be applied in payment for the property and rights so taken and used.

In section 2 of an act of the legislature of this state approved March 12, 1874, it is provided that, "in case the lands of any person *have been* overflowed, or injured, or taken, or if it shall be found necessary or proper hereafter to overflow, injure or take the lands of any person, for or by reason of the construction of any dam, bridge, lock or pier, or the re-

pair or the enlargement thereof, or the construction, repair or enlargement of any canal or other works, by the United States government, in the improvement of any harbor, river or stream of water in this state, the compensation for damages sustained by the *owner or owners of the lands overflowed, injured or taken* as aforesaid, may be ascertained, determined and paid, in the same manner as prescribed in chapter 119 of the laws of 1872, entitled, ' An act in relation to railroads and the organization of railroad companies,' approved March 22, 1872, for acquiring title to lands by railroad companies; and all the provisions of said act may apply in case of the overflowing, injury or taking of lands by the United States government for the purposes aforesaid, which are properly applicable thereto."

I have emphasized the words in the above acts used in a past tense, significantly applicable to these proceedings, which were instituted and have been conducted in accordance with said acts as far as their provisions were applicable.

It is contended by the learned counsel of the appellant, that the language, " in the mode " and " in like manner," as used in the act of congress, refers only to the method, form or manner of the proceedings themselves, and does not embrace the tribunal in which they are to be instituted, and does not import any direction or permission that such proceedings may be taken *in the courts of the state* in which the lands overflowed are situated. We think such is not its meaning, because — *First.* Such a strict construction would destroy the only purpose of the act, and make the act itself wholly unnecessary; for without it there is no doubt of the jurisdiction of the federal courts in such a case, or of their method of proceeding. *Kohl et al. v. United States*, 91 U. S. Rep., 367. *Second.* In that case Mr. Justice MILLER, in his opinion, uses the word "mode" as embracing both the proceedings to condemn lands and the tribunal in which they are to be taken, when he says: " Doubtless congress might

have provided a *mode* of taking the land and determining the compensation to be made, which would have been exclusive of all other *modes*. They might have prescribed in what tribunal or by what agents the taking and the ascertainment of the just compensation should be accomplished. The *mode* might have been by a commission, or it might have been referred exclusively to the circuit court; but this, we think, was not necessary." *Third.* Congress adopted and ratified such a construction of this language as gives direction or permission for these proceedings to be instituted in the courts of this state, by the subsequent act of June 20, 1878, making an appropriation "for payment of George F. Wheeler, Robert H. Hotchkiss and Aaron Walters for services rendered by them as commissioners, appointed pursuant .to an act of congress of March 3, 1875, to appraise damages to lands in Fond du Lac county, Wisconsin, caused by the improvement of the Fox and Wisconsin rivers."

We assume, therefore, that by the above acts of congress and of the legislature of this state, the United States government has authorized and directed the institution of these proceedings in the state court, and fully assented thereto, and this state has consented to the use of the state tribunals for such purpose. This brings us to the question of the constitutionality of the laws above cited, which is made the important question in this case by the learned counsel of the appellant. The condemnation of private property to the public use by the United States is the exercise of the sovereign power, through such agencies as congress may determine; and, as the supreme court has said in *Kohl et al. v. U. S., supra*, " doubtless congress might have provided a mode of taking the land and determining the compensation to be made, which would have been exclusive of all other modes. They might have prescribed in what *tribunal*, or by what agents, the taking and the ascertainment of the just compensation should be accomplished. It might have been by a commission, or it might.

have been referred exclusively to the circuit court." But, after all, the condemnation is made by the government through such instrumentalities and agencies as congress may have provided by law as the means by which, and the mode in which, the sovereign power to such end might be exercised. It is scarcely a delegation of the power of condemnation to designate the courts in which, or the agencies by which, it is exercised, although it is held that the power even may be delegated. *Pratt et al. v. Brown*, 3 Wis., 603. But more properly "the statutory process for its exercise" may be delegated. *Bohlman v. Green Bay & Minn. Railway Co.*, 40 Wis., 168.

The power of eminent domain is conceded by the learned counsel to be political and not judicial, and many authorities are cited by him in support of the principle, such as *People v. Smith*, 21 N. Y., 597; *Hays v. Risher*, 32 Pa. St., 169; *Bankhead v. Brown*, 25 Iowa, 540, and others; and if *political*, of course it cannot be delegated to the courts, although congress may by law confer upon any court or tribunal, or upon a commission, jurisdiction, and prescribe and determine the proceedings for the efficient and convenient exercise of this power by the government. In this case, the power to condemn and take the lands of the respondents for the use of the improvement had already been exercised, and they have long since been actually appropriated to such use, but *conditionally*, upon the payment of just compensation therefor, when ascertained in the way and mode prescribed by the law of congress above considered; and neither this state nor its courts have assumed any power to condemn, but only to determine the compensation to be made for lands already taken and condemned, according to the act of congress and the statute of this state.

Whether the United States had taken the first step and asked the appointment of these commissioners, as would have been necessary to assert the power of eminent domain and condemn lands not before taken and already appropriated, or the respondents had become the moving party, and asked for

the appointment of commissioners to ascertain the amount of the just compensation and assess the damages for lands already taken and appropriated, as in this case, not only the proceedings but the legal results would have been the same. The commissioners, in either case, take cognizance only of the question of compensation and damages as for lands taken and condemned. In the first case, the proceeding would be a suit at law, brought by the United States, in form, against the owner of the lands sought to be condemned. *Kohl et al. v. U. S.*, *supra*. May not such a suit be brought by the United States in a state court? Why not? The United States, like any other party, may bring suit for any proper purpose in a state court. *In Cotton v. U. S.*, 11 How., 229, the suit was brought in the superior court of West Florida for damages for trespass upon government lands, by the United States, and Mr. Justice GRIER says of the question of jurisdiction: " Every sovereign state is of necessity a body politic or artificial person, and as such capable of making contracts and holding property, both real and personal. . . . It would present a strange anomaly indeed, if, having the power to make contracts and hold property as other persons, natural or artificial, they were not entitled to the same remedies for their protection. . . . Although as a sovereign the United States may not be sued, yet as a corporation or body politic they bring suits to enforce their contracts and protect their property, in the state courts, or in their own tribunals administering the same laws. . . . As an owner of property in almost every state of the Union, they have the same right to have it protected by the local laws that other persons have. As was said by this court in *Dugan v. United States*, 3 Wheat., 181, 'it would be strange to deny the right which is secured to every citizen of the United States.' " See, also, *The United States v. The Bank of the Metropolis*, 15 Peters, 392, and *The United States v. Gear*, 3 How., 120. This proceeding, when instituted by the United States, is a suit at law, and as Mr. Justice STRONG says in *Kohl v.*

*U. S. et al., supra,* "it is an attempt to enforce a legal right."

There, can be no question but that the United States may institute these proceedings in a state court without any special legislative permission, and secure precisely the same legal results as were effected in this case. When the proceeding is instituted by the private owner of the property already taken for public use, as in this case, merely for the ascertainment of the compensation to be paid therefor, it may be in form a suit against the United States, and be so. entitled; but this *form* of the proceeding does not change its substance, and it remains, until the ascertainment of the compensation, a judicial proceeding by the United States to enforce the right of eminent domain by the condemnation of the property to public use. But if it be a suit, both in form and substance, against the United States, then there is no principle better established than that the United States may, by act of congress, waive its sovereignty, and authorize, permit or consent that such suit may be brought in the state court.

Without such consent, it is an axiom that no sovereignty, state or national, can be sued in any court — in its own or foreign courts. In *United States v. Clarke,* 8 Peters, 444, Chief Justice MARSHALL says: "As the United States are not suable of common right, the party who institutes such suit *must bring his case within the authority of some act of congress* or the court cannot exercise jurisdiction over it." In that case the suit was by petition against the United States, praying that the court would decree confirmation of the title of the petitioner to certain lands claimed to have been granted to him by the governor of the province of Florida; and the court held that jurisdiction of the superior court of Florida, in such case, had been conferred by the consent of the United States by act of congress. In *Reeside v. Walker,* 11 How., U. S., 290, Mr. Justice WOODBURY says: "It is well settled, too, that no action of any kind can be sustained against the

government itself, for any supposed debt, *unless by its consent under some special statute allowing it,* which is not pretended to exist." In the late case of *Carr v. The United States,* 98 U. S., 437, Mr. Justice BRADLEY says: "We consider it to be a fundamental principle, that the government cannot be sued, *except by its own consent."* See, also, 1 Kent's Com., 297; 2 Story, Const., § 1699.

It is significant that numerous statutes of the United States, from 1789 until the present, have been passed authorizing suits to be brought against the United States in the state courts and for various purposes, and such authority has not been questioned. It is needless to discuss questions not in this case, and to review authorities cited by the learned counsel, where the United States were a party to litigation in state courts and no such jurisdiction was conferred by act of congress expressing consent.

We have been cited to no case, and we think none can be found, in which it has been held that such jurisdiction may not be conferred by such legislative assent, or that such an act of congress was unconstitutional.

We shall be brief in disposing of the other questions raised upon this appeal.

*First.* The title of the plaintiff appears to have been sufficiently proved.

*Second.* The condition found in the act of congress above referred to, "and in the *opinion* of the officer in charge it is not prudent that the dam or dams be lowered, the amount of such compensation may be ascertained in like manner," imposes upon the officer of the United States an *active,* not a passive duty, which is not performed by the mere *expression* of an opinion, but which requires such final and conclusive action of the government of the United States, by such officer, as would be a legal release and relinquishment of all present and future right to maintain the dam. Any other construction would allow the mere opinion of the officer on the ques-

tion of prudence, which might or might not result in a relinquishment of the right to maintain the dam for the use of the improvement, to be a perpetual obstruction to the plaintiff's right to the damages or compensation that he might thereafter suffer, and be otherwise clearly entitled to have ascertained. We think the intention of this condition clearly was that, in the proceedings to ascertain the damages by flowage caused by such dam, if it should appear that the United States had relinquished its right to longer maintain the dam, then *future* and *permanent* damages should not be assessed, but that such relinquishment would not in any way affect the plaintiff's right to damages *already* suffered. The evidence not only showed that no such relinquishment had been made, but that it probably would not be made in the future; and therefore such mere opinion constituted no defense to the plaintiff's claim for permanent damages. The construction of this condition, claimed by the learned counsel for the appellant, would most clearly make it repugnant to the constitutional right of the plaintiffs to obtain compensation, and to the act of congress providing for its enforcement, and it would be utterly void.

*Third.* The fact that another dam besides the one in question might, to some extent, contribute to produce the flowage, raises a question which has already been decided by this court, and by the supreme court of the United States, adversely to the position taken by the counsel for the appellant. *Arimond v. Green Bay Co.*, 35 Wis., 41, and *Pumpelly v. Green Bay Co.*, 13 Wall., 166.

*Fourth.* The rule of damages submitted by the court to the jury appears to be more favorable to the United States than the rule contended for by the learned counsel of the appellant, and seems to have been substantially in compliance with the construction of the act of congress which we have already given to it, as allowing the assessment of all the past damages which were caused by the construction of the dam

within the period of statutory limitation. This liberal rule of construction of the act of congress was the one adopted by the Hon. Edwards Pierrepont, then attorney general of the United States, in his opinion under date of November 10, 1875, to General Gill, the special attorney of the government, after the commencement of these proceedings. He says: " On this point I think it may well be conceded that if, at the period of the transfer [the transfer of the improvement to the United States], there were any lands flowed by means of the works of said improvement, for which the land-owners were then legally entitled to claim compensation as for property taken or appropriated for public purposes, and the United States thenceforth maintained the flowage of the lands in the same manner and to the same extent, thus, as it were, adopting the original taking or appropriation thereof, the obligation to pay such compensation devolved upon the United States, not by virtue of any agreement or understanding with said company, but by *mere operation of law.*" This rule of damages was substantially adopted, in all probability, by the commissioners making the assessment, as well as by the circuit court on appeal.

*By the Court.* — The judgment of the circuit court is affirmed, with costs.

TAYLOR, J., took no part in this cause.