Zemlock vs. The United States.

ZEMLOCK, Respondent, vs. THE UNITED STATES, Appellant.

*January 11 — January 29, 1889.*

*Lands granted to aid in improvement of Fox and Wisconsin rivers: Sale by state: Right to flood without compensation.*

1. The lands granted to this state by the act of Congress of August 8, 1846, to aid in the improvement of the Fox and Wisconsin rivers, were not granted merely as a location for the improvements, but to be sold and the proceeds used in making the improvements. And where such lands were sold by the state without any express reservation of the right to flood them, if necessary in making the improvements, without making compensation therefor, no such reservation can be implied from the mere fact that the lands were granted to the state to aid in making such improvements.

2. Nor is any such reservation created by the act of the legislature of August, 1848 (Laws of 1848, p. 58). Sec. 16 of that act, providing that when any lands appropriated by the board of public works to the use of such improvements shall *belong to the state* they shall be absolutely reserved to the state, refers to an ownership by the state at the time of the appropriation, and not to an ownership of which the state had lawfully divested itself prior to the taking of the lands by the board.

APPEAL from the Circuit Court for *Winnebago* County. The case is sufficiently stated in the opinion.

*E. E. Chapin,* for the appellant.

For the respondent the cause was submitted on the brief of *Hume & Hilton,* attorneys, and *Gabe Bouck,* of counsel.

TAYLOR, J. This is an appeal from the judgment of the circuit court of Winnebago county awarding damages against the appellant for overflowing and injuring the plaintiff's land, by reason of the maintenance by the appellant of the dam across the Fox river at Appleton in this state. The nature of the respondent's action, and the grounds upon which the liability of the appellant for the damages caused by the overflow of the respondent's lands is based, are stated at length in the case of *Jones v. U. S.* 48 Wis. 385.

The only alleged error in the proceedings in the circuit court which is urged by the learned counsel for the appellant arises upon a motion for a nonsuit made by the appellant at the close of the plaintiff's evidence, which motion was in the following language: "The defendant moved for nonsuit on the ground that the lands described in the petition were included in a grant made by the *United States* to the state of Wisconsin under an act of Congress approved August 8, 1846, to aid in the improvement of the Fox and Wisconsin rivers and to connect the same by canal, and were conveyed by said state of Wisconsin in accordance with and in pursuance of an act of the legislature of said state approved August 8, 1848, and the several acts supplemental thereto and amendatory thereof, by which said acts the said state reserved the right to flow said lands in the works of said improvement, and the plaintiff purchased the same subject to such reservation." This motion was renewed after all the evidence was presented by both parties, and the motion was denied in both cases, and appellant duly excepted.

The appellant also asked the court to instruct the jury as follows: "If the jury find from the evidence that the lands described in the petition were granted by the *United States* to the state of Wisconsin on the admission of such state into the Union, for the purpose of aiding in the

improvement of the Fox and Wisconsin rivers, and that afterwards said lands became the property of the state of Wisconsin for the purposes contemplated by the act of Congress approved August 8, 1846, and that the lands described in the petition were transferred by the state of Wisconsin in pursuance of the act of the legislature approved August 8, 1848, to Jonathan Lincoln, from whom, by regular chain, plaintiff derived title, then the plaintiff cannot recover." To the refusal to give this instruction the appellant also duly excepted.

The motions and instructions asked raise the same questions. The contention of the learned counsel for the appellant is that, as the evidence clearly established the fact that the land owned by the respondent, on account of which he claims damages for its overflow by the maintenance of the dam by the appellant at Appleton, is a part of the lands granted to this state by the *United States* to aid in the improvement of the navigation of the Fox and Wisconsin rivers, the grantee of the state and those claiming under him hold said lands subject to the right of the state, its assignees and grantees, to flow such lands without making compensation therefor if it becomes necessary so to do in making improvements in the navigation of said rivers. This is the only question raised by the learned counsel for the appellant in this court. It is admitted that the maintenance of the dam at Appleton is necessary for the improvement of the navigation of the Fox river, and that it is maintained by the *United States* for that purpose, and also that this dam causes the overflow and damage to the plaintiff's lands. The only question is whether there was any express or implied reservation on the part of the state when the lands in question were granted to Jonathan Lincoln by the state, March 1, 1850, from whom the plaintiff derives title, to flow such lands in the future without making compensation therefor if it became necessary to do so

in making improvements in the navigation of said Fox river. There is no claim that any reservation was made in the grant from the state to Lincoln in 1850. The proof shows that the grant was absolute and without any condition or reservation. The contention of the learned counsel for the appellant is that, notwithstanding the absolute nature of the grant, under the law of the state and considering the purposes for which the lands were granted by the *United States* to this state, there was an implied reservation that the state or those claiming under it might, if necessary to improve the navigation of the Fox river, flow said lands without making any compensation.

The argument of the learned counsel fails to convince us that there was any such reservation implied or expressed when the state granted the lands in question to the said Lincoln. The evidence does not show that the lands were flowed by reason of any works of improvement made by the state or its authorized agents at the time the lands were conveyed to the said Lincoln. If there was any reservation, it must arise out of the fact that the lands were granted to the state to aid the state in improving the navigation of said Fox river, or upon some law of the state in force at the time of the grant which created such reservation notwithstanding the terms of the grant. We are unable to see anything in the purposes for which the grant was made to the state upon which an implied reservation to flood the same without compensation can be founded. It is very clear that the lands were not granted to the state merely for the purpose of a location for the improvements, as lands might be granted for the location of a highway or other public improvement. On the other hand, it was the clear intention of the *United States* and of this state that the lands granted should be sold by this state, and the proceeds of such sale should be used in making the improvements contemplated. The power of sale on the part of the state

was absolute, and, if exercised without any reservation, none can be implied from the mere fact that the purpose of the grant was to aid in making improvements in the navigation of the Fox river.

If we understand the argument of the learned counsel for the appellant, he does not rely upon the mere fact that the lands were granted to the state for the purpose of aiding in making the improvement, but he insists that the legislature of the state had, previous to the date of the grant to Jonathan Lincoln, passed a law making such reservation in all grants thereafter made. It may be admitted that the legislature might have passed an act in general terms reserving to the state, its grantees or agents, the right to flood any land thereafter granted by the state to any person or persons, by making improvements in the Fox and Wisconsin rivers, without making compensation for such flooding, and that such act would create a reservation of such right, notwithstanding the absolute terms of the grant itself. The only act of the legislature upon which the learned counsel relies as creating such reservation, is the act of August, 1848, which provides for the construction of improvements contemplated by the act of Congress in granting lands to the state for the improvement of the navigation of the Fox and Wisconsin rivers in this state. And secs. 15 and 16 of said act are the only ones on which the learned counsel relies as creating such reservation. See Laws of 1848, p. 58. Secs. 15 and 16 of said act read as follows:

"Sec. 15. In the construction of such improvements the said board shall have power to enter on, to take possession of, and use all lands, waters, and materials the appropriation of which for the use of such works of improvement shall in their judgment be necessary.

"Sec. 16. When any lands, waters, or materials appropriated by the board to the use of said improvements *shall*

*belong to the state*, such lands, waters, or materials, and so much of the adjoining lands, waters, or materials as may be valuable for hydraulic or commercial purposes, shall be absolutely reserved to the state; and whenever a water-power shall be created by reason of any dam erected or other improvements made on any of said rivers, such water-power shall belong to the state, subject to future action of the legislature."

Among other things, this act provided for the creation of a "board of public works," with power to make improvements in said rivers.   It also provided for a sale of the lands granted by Congress to the state for the purpose of aiding in making such improvements, fixing a minimum price at which the lands might be sold; also allowing pre-emption rights to settlers on said lands; and sec. 43 of the act provided that "whenever sales of any of said lands shall be made, either at public or private sale, in conformity with the provisions of this act, it shall be the duty of the governor of the state to grant to the purchaser, upon the certificate of the register, a patent for the lands so sold, which patent shall be under the seal of the state, and countersigned by the secretary of state, *and shall vest* in the purchaser, his heirs and assigns, an absolute estate in fee simple."   Secs. 17, 18, 19, and 20 of said act provide for making compensation to those whose lands, materials, or waters are taken by the board of public works without their consent.   This act was in force when the lands in question were granted to the said Lincoln, in March, 1850.

It is alleged in the petition in this case that the "board of public works," for the purpose of improving the navigation of Fox river, erected the dam in question, which causes the overflow of plaintiff's lands, in 1852.   The answer to the petition alleges "that the dam referred to in said petition was erected for the purposes set forth in said petition, at the place mentioned and described in said petition; but

says that the dam across that part of said Fox river leading from the waters of Little Lake Butte des Morts to Green Bay, described in said petition, was constructed and fully completed prior to 1850, and maintained by parties other than the defendant herein." Under the pleadings and evidence in this case it must be held that at the time the state granted these lands to the said Lincoln, neither the state nor the "board of public works" had in any way or manner entered upon, taken possession of, or used the lands in question for the purposes of such improvement. The *United States* does not, therefore, by its answer or proofs, bring itself within the language of said secs. 15 and 16 of said act of 1848.

It seems to us that said sec. 16 can only admit of one construction, so far as applicable to the question involved in this case. The language is: "When any lands," etc,, "appropriated," etc., "shall belong to the state," etc. This language clearly refers to the ownership of the state at the time of the appropriation, and not to an ownership at any previous date, and of which ownership the state had lawfully divested itself previous to the time of the taking by the board of public works. If the construction contended for by the learned counsel for the appellant should be given to the áct, it would subject all lands which the state had ever owned to this right of overflow by the works of said improvement without compensation, whether they were lands granted to the state to aid in the construction of such works, or for any other purpose, such as school lands. Had the legislature intended that the lands granted to the state to aid in the improvement should always be subject to be taken for that purpose without making compensation to the grantee of the state, it seems to us it would have used more definite language; and it would not have declared, as it did in sec. 43 of the act, that the grant of the state of any such

lands "should vest in the grantee, his heirs and assigns, an absolute estate in fee simple."

It would probably have been a wise thing on the part of the state if in its conveyances of these lands bordering on the waters of Lake Winnebago and the Fox river and its tributaries it had reserved the right to overflow the same as far as necessary by the works of improvement, and it seems that in all grants made after 1850 such a reservation was in fact made.

We think the motion for a nonsuit was properly overruled, as well as the motion to instruct the jury as requested by the appellant. There being no other matter assigned as error, the judgment of the circuit court must be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.